IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

HUMBERTO GARCIA and ANN HAYDEN,
Individually and as Representative of the Estate of
Virginia Garcia,
                    Plaintiffs,

-vs-                                                   Case No.  A-05-CA-930-SS

CITY OF AUSTIN, TEXAS; STANLEY L.
KNEE; and RUDY LANDEROS,
                    Defendants.

_____

## O R D E R

BE IT REMEMBERED on the 3rd day of February 2006, the Court called the above-styled

cause for a hearing, and the parties appeared through counsel.  Before the Court was Defendants'

Rule 12(b)(1) & (6) Motion to Dismiss [#10].  Having considered the motion, response, and reply,

the arguments of counsel at the hearing, the relevant law, and the case file as a whole, the Court

enters the following opinion and order.

### Background

The following facts are taken from the allegations in Plaintiffs' amended complaint.  On

January 26, 2004, Virginia Garcia, the daughter of Plaintiffs Humberto Garcia and Ann Hayden, was

raped and murdered by David Diaz Morales, a Mexican national illegally present in the United

States.  Am. Compl. ¶ 6.  Sometime prior to that date, Morales had been removed from the country

(and subsequently illegally reentered) for immigration violations.  *Id.* ¶ 7.  In March of 2002, Austin

Police Department ("APD") officials investigated Morales for the molestation of a minor child.

*17.*

*Id.* ¶ 8. At the time he was investigated, Morales was known to be illegally present within the United States. *Id.* ¶ 9. According to Plaintiffs, Morales would have been a top priority for federal immigration authorities, had they been aware of his presence. *Id.* ¶ 10.

Plaintiffs allege that APD officials failed to notify federal authorities of Morales's presence in the United States because of an illegal sanctuary policy, "whereby city employees are significantly restricted in their ability to communicate with federal law enforcement officials regarding the citizenship and immigration status of persons residing or present within the jurisdictional limits of the City of Austin." *Id.* ¶ 11. Plaintiffs allege Defendants Knee and Landeros are responsible for the promulgation of this policy *Id.* ¶¶ 11–18.

On the basis of these facts, Plaintiffs assert the following causes of action. First, they seek a declaratory judgment that Defendants' actions violate 8 U.S.C. §§ 1373 and 1644 as well as section 3(a) of article I of the Texas Constitution.[1] *Id.* ¶ 20. Plaintiffs also seek a declaration that City employees, including APD officers, may communicate with the United States Bureau of Immigration and Customs Enforcement about the immigration status of any person without restriction. *Id.* Plaintiffs also argue Defendants' actions constitute unlawful national origin discrimination under

---

[1] 8 U.S.C. § 1373 provides in pertinent part:

"Notwithstanding any other provision of Federal, State, or local law, a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual."

8 U.S.C. § 1373.

Section 1644 contains essentially the same provision using slightly different language. 8 U.S.C. § 1644.

Article I, Section 3a of the Texas Constitution provides: "Equality under the law shall not be denied or abridged because of sex, race, color, creed, or national origin." TEX. CONST. art. I, § 3a.

42 U.S.C. § 1981, 42 U.S.C. § 2000d,[2] and the Equal Protection Clause of the United States Constitution, and they seek a declaratory judgment to that effect. *Id.* ¶ 22. Furthermore, Plaintiffs seek an injunction to prevent Defendants from expending public funds to continue implementing the challenged policy. *Id.* ¶¶ 24–25. Finally, Plaintiffs seek damages and equitable relief under § 1983. *Id.* ¶ 26.

## Discussion

Defendants have moved to dismiss Plaintiffs' claims for failure to state a claim and for lack of subject matter jurisdiction. The crux of Defendants' motion is that Plaintiffs lack standing to pursue the relief they seek in this suit. As an initial matter, the Court notes Plaintiffs' claim for damages is in a different class from its claims for declaratory and injunctive relief. Accordingly, the Court considers the claims for relief separately, beginning with the claims for declaratory and injunctive relief.

---

[2] 42 U.S.C. § 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981.

42 U.S.C. § 2000d provides:

No person in the United States shall, on the ground of race,color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d.

## I.   Plaintiffs Lack Standing to Assert Claims for Injunctive and Declaratory Relief

With respect to Plaintiffs' claims for declaratory and injunctive relief, the law is clear that standing is lacking.  Article III of the Constitution constrains the jurisdiction of the federal courts to actual cases and controversies.  U.S. CONST. art. III, § 2.  The judicially developed standing doctrine is a crucial means of ensuring that Article III's "case or controversy" requirement is met in each case heard by the federal courts.  To have standing, a plaintiff must demonstrate: (1) an injury-in-fact; (2) that is fairly traceable to the defendants' challenged conduct; and (3) that is likely to be redressed by the relief the plaintiff seeks from the Court.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To meet the first requirement of standing—demonstrating an injury-in-fact—a plaintiff must allege an injury that is "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'"  *Id.* (citations omitted).  "Particularized" means "the injury must affect the plaintiff in a personal and individual way."  *Id.* at 560 n.1.  In other words, a plaintiff cannot assert "generalized grievances" from which all citizens suffer.  As to the fairly-traceable element, the plaintiff must demonstrate a causal connection between the injury and the challenged conduct sufficient to permit the Court to conclude the injury is not or would not be "th[e] result [of] the independent action of some third party not before the court."  *Id.* at 560 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)).

Special considerations apply when both a claim for damages and claims for declaratory and injunctive relief are present in the same suit.  The Court must be careful not to assume the presence of standing to seek the latter type of relief simply because standing to assert the former may be available.  *See Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992)

("[P]laintiffs may lack standing to seek prospective relief even though they have standing to sue for damages.").

The law is clear: even one who may have a viable claim for damages for injury caused by an illegal or unconstitutional action by a government official must be able to demonstrate the likelihood of being similarly injured again in the future before injunctive or declaratory relief will be warranted. In *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), the plaintiff, Lyons, sued the City of Los Angeles and various individual police officers after he was injured by the use of a "chokehold" during a roadside stop. *Id.* at 97–98. He asserted: (1) claims for damages arising from his injuries; (2) a claim for injunctive relief to prevent the routine use of chokeholds in the future; and (3) a claim for a declaratory judgment that "use of the chokeholds absent the threat of immediate use of deadly force is a *per se* violation of various constitutional rights." *Id.* at 98.

The Supreme Court held that Lyons lacked standing to assert his claims for injunctive or declaratory relief. *Id.* at 104–07. It reasoned that "Lyons' standing to seek the injunction requested depended on whether he was likely to suffer future injury from the use of the chokeholds by police officers." *Id.* at 105. Holding that the occurrence of one incident in which Lyons was subjected to a chokehold "does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part," the Supreme Court decided there was not a sufficient case or controversy to support the exercise of jurisdiction over the injunction claim. *Id.* In the Court's view, Lyons was asserting a generalized grievance in seeking an injunction: "Absent a sufficient likelihood that he will again be wronged in a similar way, Lyons is no more entitled to an injunction than any other citizen of Los Angeles; and a federal court may

-5-

not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional." *Id.* at 111.

Here, Plaintiffs are in the same position as Lyons was. Assuming for the sake of argument that they have standing to seek damages arising out of the death of their daughter, that does not mean they have standing to seek declaratory or injunctive relief. Indeed, they have pleaded no facts to suggest they are any more likely to suffer future injury as a result of the City's alleged sanctuary policy than any other citizen of Austin. Moreover, the likelihood that such an injury would ever come to pass is exceedingly speculative in their case. Plaintiffs would first have to show that they—or a family member on whose behalf they would have a right to assert a legally cognizable interest—are likely to be victimized in some way by an alien within the City of Austin, whose presence here is a violation of the immigration laws of this country. Not only that, they would have to show that City officials would be aware of the presence of this hypothetical wrongdoer and that they would decline to share information with the federal authorities due to the policy Plaintiffs challenge here. Finally, Plaintiffs would have to establish that information sharing with the federal authorities would have resulted in the deportation, incarceration, or some other form of incapacitation of the hypothetical wrongdoer so as to have prevented a future crime from occurring. The speculative nature of such a claim is apparent, and it will not support standing under *Lyons*.

Plaintiffs also contend they have "taxpayer standing" to enjoin the improper expenditure of public funds. The argument is without merit. Their claim that the City is improperly spending the money of the taxpayers falls squarely within the category of "generalized grievances" the standing doctrine prohibits federal courts from hearing. While Plaintiffs rely on Texas cases to suggest that such improper expenditure challenges are justiciable, it is federal law, not state law, that governs the

standing inquiry. *Rocks v. City of Philadelphia*, 868 F.2d 644, 647 (3d Cir. 1989). Outside a narrow class of Establishment Clause cases (in which this case obviously does not fall), one's status as a municipal taxpayer will not, in itself create a sufficient basis to satisfy federal prudential standing requirements. *Id.* at 648–49.

As to Plaintiffs' claim for damages under § 1983, the standing inquiry is necessarily different. Because an award of damages merely compensates a plaintiff for past wrongs, there is no need to show the likelihood of future injury to prove that favorable relief from the Court would redress the Plaintiffs' injury. *See Wernsing v. Thompson*, 423 F.3d 732, 745 (7th Cir. 2005) ("[I]njuries compensable in monetary damages can always be redressed by a court judgment.").

Defendants do not merely attack the redressability prong of Plaintiffs' case for standing, however. They also argue Plaintiffs cannot establish the existence of a particularized injury, nor can they show their injury is fairly traceable to the conduct of defendants. With respect to the first of these arguments, the Court concludes Plaintiffs have, in fact, alleged a sufficiently particularized injury to support standing. After all, the injury for which they seek redress—the death of their daughter—is inherently particular to them. As both the parents and the representatives of the estate, no one is in a better position than Plaintiffs to seek compensation for the loss of their daughter. *See Rhyne v. Henderson County*, 973 F.2d 386, 390–91 (5th Cir. 1992) (holding a mother had the right to bring an action under § 1983 based on the alleged wrongful death of her son). It can hardly be argued that death does not constitute a concrete and particular injury.

However, Plaintiffs' claim ultimately fails because they cannot overcome Defendants' second argument: Plaintiffs' injury is not "fairly traceable" to the conduct complained of. Moreover, the Court agrees with the position of Defendants that the actions of David Diaz Morales constitute an

intervening cause of the death of Plaintiffs' daughter, which prevents a conclusion that the injury they suffered is fairly traceable to Defendants' conduct.

Plaintiffs' theory of causation in this case is simply too speculative to support their claim. Plaintiffs' theory requires one to assume that, but for Defendants' policy, APD officials would have contacted federal immigration authorities, who in turn would have taken Morales into custody and initiated criminal and/or deportation proceedings against him, which then would have resulted in Morales's conviction and/or deportation. One would further have to presume that Morales would not have returned to the streets of Austin by the time the crime against Plaintiffs' daughter was committed (even though Plaintiffs' own allegations indicate Morales had already reentered the country once following a deportation). The string of inferences necessary to sustain Plaintiffs' case is simply too great, and accordingly, Plaintiffs are unable to satisfy the "fairly traceable" element of the standing inquiry.

Even if the the chain of inferences put forth by Plaintiffs were sufficient to sustain their traceability theory, it is clear that the intervening tortious conduct of Morales precludes the Court from assigning responsibility to Defendants. *See St. Paul Guardian Ins. Co. v. Centrum GS Ltd.*, 283 F.3d 709, 714 (5th Cir. 2002) (noting that under Texas law, the criminal act of a third party constitutes an intervening cause precluding liability for the resulting injury unless the criminal act was foreseeable); *see also Murray v. Earle*, 405 F.3d 278, 291–93 (5th Cir. 2005) (applying the doctrine of intervening cause to a suit under § 1983).

The failure of causation in this case ultimately dooms Plaintiffs' ability to show standing. *See Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 321 (5th Cir. 2002) (dismissing a claim for damages against a drug manufacturer on standing grounds where the facts supporting the causation element

-8-

of the claim had been insufficiently alleged). Because standing is a fundamental prerequisite to the exercise of federal subject-matter jurisdiction, the Court holds Plaintiffs' claims must be dismissed.

**Conclusion**

In accordance with the foregoing:

IT IS ORDERED that Defendants' Rule 12(b)(1) & (6) Motion to Dismiss [#10] is GRANTED.

SIGNED this the _28ᵗʰ_ day of February 2006.

SAM SPARKS
UNITED STATES DISTRICT JUDGE